IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rodolfo Perez-Martinez,     :
     Petitioner    :
          :
   v.       :  No. 283 C.D. 2025
          :
Dart Container Corporation of   :  Submitted: June 16, 2026
Pennsylvania (Workers' Compensation :
Appeal Board),      :
     Respondent   :


BEFORE:  HONORABLE PATRICIA A. McCULLOUGH, Judge
     HONORABLE MATTHEW S. WOLF, Judge
     HONORABLE MARY HANNAH LEAVITT, Senior Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION
BY JUDGE McCULLOUGH       FILED: July 24, 2026


   Rodolfo Perez-Martinez (Claimant) petitions for review of the February 5, 2025 order of the Workers' Compensation Appeal Board (Board), which affirmed the order of the Workers' Compensation Judge (WCJ) granting Claimant's Claim Petition for a closed period, awarding disability benefits until October 5, 2022, and terminating his benefits as of April 3, 2023. After careful review, we affirm.

   Claimant began working for Dart Container Corporation of Pennsylvania (Employer) in October 2014 as a machine operator. In January 2022, Employer first asked its employees, including Claimant, to wear steel-toed boots or to use covers for their shoes if the employee did not have steel-toed boots. Claimant alleged that the steel-toed boots were heavy and caused his feet to swell; he also developed a bump underneath his left foot.

Claimant initially treated with his family doctor for his complaints. He was referred to Dr. Arwa El Sayed, who prescribed an orthopedic boot and steroids. Dr. Sayed provided work restriction notes, which Claimant provided to Employer's Human Resources Department and to his supervisors. Claimant last worked for Employer sometime in 2022. He stopped working because he was told that wearing steel-toed boots was mandatory.

On December 20, 2022, Claimant filed a Claim Petition alleging that he sustained a "foot condition caused by and/or aggravated by required footwear at work" as of January 31, 2022, during the course of his employment with Employer. Claimant sought periods of partial and total disability benefits. Employer filed a timely answer to the Claim Petition, denying the allegations set forth therein.

Before the WCJ, Claimant testified that he wore the steel-toed boots for the entire month of January 2022. (Reproduced Record (R.R.) at 60a.) He claimed that his feet started to hurt at the end of January. *Id.* Claimant was offered shoe covers by Employer instead of the steel-toed boots. *Id.* at 61a. He tried using the shoe covers for approximately two hours. *Id.* at 62a.

As of the date of the hearing, Claimant had no pain in his left foot. *Id.* He was able to drive a car. *Id.* He is no longer taking any medications. *Id.* at 63a. He indicated that he has no work restrictions at this time; he could not recall the last time he had work restrictions. *Id.* at 63a, 64a. Claimant stated that he has looked for work, but he cannot look for a job based on what he does because he cannot wear boots. Claimant indicated his understanding through the advice of his doctor that he should not have a job in which he has to wear boots.

Claimant presented the deposition testimony of Dr. Sayed, a podiatric physician, board certified in podiatric medicine and board qualified for the foot surgical

boards. Dr. Sayed first saw Claimant in April 2022, at which time he had complaints of bilateral foot pain. *Id.* at 91a. Claimant reported that he had developed foot pain due to wearing heavier shoes at work. *Id.* Dr. Sayed opined that Claimant had an inflammation of the sesamoid caused "by a high arch foot type" higher than most of the patient population, "less cushioning on the bottom of his foot than the average person," pressure from the heaviness of the boot, and prolonged walking and standing. *Id.* at 92a-94a. She recommended that he obtain lighter shoes or change the style of work he performed. *Id.* at 96a-97a. She also provided inserts for his shoes, which improved the sesamoid "right away." *Id.* at 96a.

Dr. Sayed provided work notes to modify Claimant's work activities on April 26, 2022 (taking him out of work and requiring that he wear an orthopedic boot), August 18, 2022 (requiring that he be able to take more breaks), and October 5, 2022 (allowing him to resume work wearing different shoes). *Id.* at 97a-98a. She did not believe that Claimant could return to his pre-injury job, since he would be prone to having inflammation in the future. *Id.* at 98a-99a. Dr. Sayed last saw Claimant in April 2023, at which time he was improved in comparison to the prior year. *Id.* at 99a-100a.

On cross-examination, Dr. Sayed testified that she did not know how long Claimant had been wearing the steel-toed boots before his complaints began. *Id.* at 103a. She suspected that he had been wearing them for several months prior to the onset of pain. *Id.* She was not aware of when Claimant stopped wearing steel-toed boots. *Id.* at 108a-09a. Dr. Sayed testified that his right foot complaints resolved "really quickly." *Id.* at 106a. Dr. Sayed explained that it typically takes two to three months for these types of injuries to resolve. *Id.* at 108a. She agreed that Claimant was well outside the typical recovery period. *Id.* at 109a. She did not provide any work restrictions for Claimant when she last saw him in April 2023. *Id.* at 108a.

Employer presented the testimony of Tara Mohler via deposition on July 28, 2023. *Id.* at 122a. Ms. Mohler, who has worked for Employer for over 18 years, is a Production Supervisor. *Id.* at 127a. As part of her job duties, she receives complaints from employees concerning work injuries. *Id.* at 128a. Ms. Mohler is one of Claimant's supervisors. *Id.* at 128a-29a. She indicated that, effective January 1, 2022, Employer instituted a policy that anyone who is a machine operator (such as Claimant) or a supervisor must wear steel-toed shoes. *Id.* at 130a. At some point, Ms. Mohler learned that Claimant had complained to Human Resources that the shoes hurt his feet. *Id.* at 130a-31a; 134a-35a. Claimant was given the option to wear steel shoe covers. She explained that with the steel covers, the person wears their regular shoes, but a steel plate is placed over top of the shoe. She said it is like an insert you put your foot into. Claimant did not utilize the steel shoe cover option. *Id.* at 131a, 137a-38a.

Employer also presented the testimony of Barry A. Ruht, M.D. via deposition on August 31, 2023. *Id.* at 147a. Dr. Ruht, who is licensed to practice medicine in Pennsylvania, is board certified in orthopedic surgery and fellowship-trained in foot and ankle treatment. *Id.* at 154a-55a. He has a private practice where he sees patients in the office and performs surgeries; he sees patients with complaints similar to those of Claimant on a daily basis. *Id.* at 155a-56a. Dr. Ruht performed an independent medical examination (IME) of Claimant on April 3, 2023. *Id.* at 157a-58a. At that time, he obtained a history from Claimant concerning the work injury. *Id.* at 158a-59a. Claimant was not working at the time of Dr. Ruht's examination. *Id.* at 159a. Claimant reported that he was able to drive. *Id.* at 160a. As of the date of the IME, Claimant complained of left foot pain, a lack of strength in his left foot, and occasional left knee and left hip pain. R.R. at 160a-61a.

Dr. Ruht performed a physical examination of Claimant, which yielded objectively normal results. *Id.* at 163a-70a. He also reviewed Claimant's medical records. *Id.* at 170a-75a. He noted that x-rays of the left foot performed on April 26, 2022, an ultrasound of the left foot performed on June 13, 2022, and a magnetic resonance image (MRI) of the left foot performed on November 8, 2022, were all normal and did not show any findings that correlated with Claimant's subjective complaints. *Id.* at 171a-74a. An electromyography study performed on December 7, 2022, was within normal limits. *Id.* at 174a.

Dr. Ruht opined that Claimant did not suffer any work-related injury. *Id.* at 175a-76a; 194a-95a. He opined that if Claimant had sustained any work-related injury, he fully recovered from any such injury. *Id.* at 177a.

The WCJ circulated an opinion on April 1, 2024. The WCJ found that Claimant sustained a work-related injury in the nature of left and right foot pain and sesamoiditis of the left foot, which caused a disability from January 31, 2022, until October 5, 2022, and from which the Claimant fully recovered as of April 3, 2023.

The WCJ credited Claimant's testimony, in part. *Id.* at 17a (Finding of Fact 10). Specifically, the WCJ credited Claimant's subjective complaints through October 5, 2022, the date on which his expert testified that he was at his baseline. *Id.*

The WCJ credited the testimony of Dr. Sayed, in part. *Id.* at 18a (Finding of Fact 12). Specifically, the WJ found that

> Dr. Sayed credibly stated that **Claimant's foot type made him prone to having difficulty wearing work boots** during the course of his workday that required him to be on his feet for significant periods of time. She explained that **Claimant's wearing of the required work boots aggravated this underlying condition** for a period of time, **but the aggravation quieted down by October 5, 2022, where he was able to return to work**. She noted at that

5

time Claimant should not return to work where he would be on his feet for extended periods given his preexisting foot type. Dr. Sayed's opinion that **Claimant developed sesamoiditis of the left foot from wearing the required work boots** in January of 2022 is found to be credible.

*Id.* at 18a (Finding of Fact 12) (emphasis added).

The WCJ credited the testimony of Ms. Mohler. *Id.* at 17a-18a (Finding of Fact 11). The WCJ also credited the testimony of Dr. Ruht, in part. *Id.* at 18a-19a (Findings of Fact 12 and 13). Specifically, the WCJ credited Dr. Ruht's opinion that the steel-toed work boots caused Claimant a lot of pain but did not cause any structural damage to Claimant's feet, and that by the time he examined Claimant on April 3, 2023, Claimant had fully recovered from any work-related foot injuries he may have developed. *Id.*

Based upon these credibility findings, the WCJ determined that, "**because of Claimant's pre-existing foot-type,**" Claimant developed foot pain and left foot sesamoiditis from wearing the required work boots in January 2022. *Id.* at 19a (Finding of Fact 14). The WCJ further found:

> [ ] Claimant's sesamoiditis and/or any other flare-up of pain caused by wearing the required work boots had quieted down as of October 5, 2022[,] and that he could return to work, albeit in a position where he did not have to wear work boots and work on his feet all day. **This [WCJ] notes Dr. Sayed's recommendation that Claimant not return to his pre-injury position was <u>not due to any ongoing work-related "aggravation" of his underlying condition</u>, <u>but was based on Claimant's preexisting foot type that makes wearing work boots difficult for him</u> and prone to re-injury should he return to such a position**.

*Id.* at 19a (Finding of Fact 15) (emphasis added).

6

The WCJ also found that Claimant had a partial loss of earnings from January 31, 2022, through April 15, 2022, and a total loss of earnings from April 16, 2022, through October 5, 2022. *Id.* at 19a (Conclusion of Law 2). The WCJ further found that Claimant had fully recovered from the work-related injury by the time of Dr. Ruht's examination on April 3, 2023. *Id.* (Finding of Fact 17). The WCJ therefore granted the Claim Petition, in part, and awarded a closed period of workers' compensation benefits. *Id.* at 21a.

Claimant appealed to the Board. Relying on *Lash v. Workmen's Compensation Appeal Board (General Battery Corp.)*, 420 A.2d 1325 (Pa. 1980), and *Farquhar v. Workmen's Compensation Appeal Board (Corning Glass Works)*, 528 A.2d 580 (Pa. 1987), he argued that the WCJ failed to recognize that his aggravation injury was caused by Employer's steel-toed boot mandate and that resumption of his work would lead to the resumption of the same physical impairment since the steel-toed boot mandate was still in place. He therefore argued that ongoing disability benefits should have been awarded because he demonstrated permanent loss of earning power as he was incapable of returning to his pre-injury job. (R.R. at 22a-23a.)

By Opinion and Order issued on February 5, 2025, the Board affirmed the WCJ's Order. The Board rejected Claimant's "recurrence upon return to work" argument because (1) the condition underlying Claimant's injury (high arch) existed before his employment; and (2) his injury (sesamoiditis) ended. Specifically, the Board explained:

> Claimant relies on *Lash* . . . and *Farquhar* . . ., among other cases. In *Lash*, the claimants handled lead daily as part of the job and as a result, developed lead poisoning. Because the claimants could not risk further exposure, they were precluded from returning to their pre-injury jobs and were moved to lesser paying jobs. Although the claimants' health had not deteriorated to advanced lead poisoning, the

7

Supreme Court held they did not have to work until they became ill in order to establish a compensable injury because the evidence established that becoming lead absorbers was a direct result of their work and future exposure would be detrimental. In rejecting the employer's argument that the claimants were not yet eligible for benefits, the Court explained "[i]t would be barbaric to require . . . employees to continue in a position where [they are] exposed to a toxic substance until [they are] so ill that [they] physically [are] incapable of performing [their] job." [] 420 A.2d at 1327.

In *Farquhar*, the claimant worked as a screen maker and developed effort thrombosis resulting in disability. After receiving workers' compensation, the claimant returned to the same position and experienced a flare up, so her physician told her she was permanently unfit to perform those duties. Following her discharge for refusing to perform the duties, the claimant sought reinstatement. Because the claimant was not exhibiting symptoms at the time she sought reinstatement, the WCJ denied relief. The Supreme Court reversed because due to the nature of the claimant's condition, the consequences would be severe if she had another episode and she could not be denied compensation simply because her symptoms were not currently manifesting.

We are guided here by the discussion in *Bethlehem Steel Corp. v. Workers' Compensation Appeal Board (Baxter)*, [] 708 A.2d 801 (Pa. 1998). There, the claimant, diagnosed with childhood asthma, suffered from breathing problems while exposed to fumes while working as a welder that aggravated his asthma. Away from his occupational exposure, his lung function returned to normal, his injury resolved, and the exposure did not result in any permanent injury. In distinguishing *Lash*, the *Baxter* Court noted that the claimants in *Lash* suffered from work-injuries that never resolved. The claimant's expert in *Baxter*, however, found no evidence that he sustained any continuing changes to his lung function. Once the claimant recovered from his work-related aggravation and returned to baseline, the Court determined that he became ineligible for benefits regardless

of his inability to return to his pre-injury job because of his pre[]existing condition.

*Id.* at 38a (internal citations omitted).

The Board determined that, like the claimant in *Baxter*, Claimant's injury was an aggravation of a preexisting, non-work-related condition, the work boots did not cause any structural damage to his foot, and his condition resolved as of October 5, 2022. Therefore, he was not entitled to continuing benefits and the WCJ properly awarded disability benefits for a closed period.

Claimant now appeals to this Court.[1] He argues, as he did below, that his work-related injury has not ended because he is not able to return to his pre-injury job under the steel-toed boot mandate without further work-related exacerbation of his underlying foot condition. He maintains that once he demonstrated that his wage loss was caused by a work-related aggravation of his foot condition, and that returning to work could reaggravate that condition, he was entitled to ongoing disability benefits. He asserts that as in *Lash*, he should not be required to return to work and suffer a recurrence of the condition in order to collect disability benefits.

In a claim petition proceeding, the claimant bears the burden of establishing all the elements necessary to support an award of benefits, including the existence of an injury and disability, and a causal relationship between the injury and the claimant's work. *Giant Eagle, Inc. v. Workers' Compensation Appeal Board (Thomas)*, 725 A.2d 873, 876 (Pa. Cmwlth. 1999). Disability is the loss of earnings or earning power that is caused by a work-related disease or injury. *School District of Philadelphia v. Workers' Compensation Appeal Board (Lanier)*, 727 A.2d 1171, 1172

---

[1] This Court's review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673, 676 n.6 (Pa. Cmwlth. 1996).

(Pa. Cmwlth. 1999). Pursuant to Section 301(c)(1) of the Workers' Compensation Act (Act),[2] 77 P.S. § 411(1), included in the definition of "injury" is a work-related aggravation of a preexisting non-work-related injury or medical condition.

The burden remains on the claimant to show that his or her work-related disease or injury continues to cause disability (*i.e.*, it affects his or her ability to earn a wage) throughout the pendency of the claim proceeding. *Somerset Welding & Steel v. Workmen's Compensation Appeal Board (Lee)*, 650 A.2d 114, 119 (Pa. Cmwlth. 1994). A termination is generally supported when the evidence establishes that the claimant has fully recovered from the work injury and any remaining disability is no longer the result of the work injury. *Benson v. Workmen's Compensation Appeal Board (Haverford State Hospital)*, 668 A.2d 244, 247 n.4 (Pa. Cmwlth. 1995).

Relevant here, a claimant, once injured, is not required to "bear the risk of probable severe and totally disabling reinjury by return to heavy work on pain of foregoing all compensation." *Farquhar*, 528 A.2d at 587. Accordingly, if the claimant introduces medical evidence that his work injury "resulted in an ongoing condition," he could be eligible for benefits. *Baxter*, 708 A.2d at 804. If, on the other hand, the claimant has completely recovered, the award would be subject to termination. *Wagner v. Workers' Compensation Appeal Board (O'Malley Wood Products, Inc.)*, 805 A.2d 683 (Pa. Cmwlth. 2002) (in aggravation-of-preexisting back condition case, condition resolved, and termination of benefits was appropriate). Moreover, if workplace exposure results in an ongoing disabling condition, benefits may continue; however, where no restrictions from the work-related injury exist, and only the threat of future recurrences prevents the claimant from performing his or her time-of-injury job, then a claimant no longer is entitled to benefits when his condition returns to baseline.

---

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501-2710.

*Meadville Forging Company v. Workers' Compensation Appeal Board (Hawes)*, 726 A.2d 1111, 1114-15 (Pa. Cmwlth. 1999).

In *Farquhar*, the claimant developed a blood clot in her arm as the result of her work as a screen-maker with the employer. Following hospitalization, during which time she received benefits, the claimant's symptoms resolved. The employer offered her a new position instructing others as to how to make screens for the employer, but due to the fact that she still had to use her arms to demonstrate the screen-making process, this position aggravated the blood clot, and her doctor advised her to no longer perform strenuous activity with her arms. The employer advised the claimant that there was no longer a need for a screen-making instructor, but offered her the pre-injury screen-maker position. The claimant refused the position, was terminated, and filed a petition seeking reinstatement of her benefits. At the hearings on the petition, the claimant's doctor credibly testified that the claimant's work caused the blood clot. 528 A.2d at 582-83.

The WCJ denied the petition and the Board and this Court affirmed that decision. Our Supreme Court, however, reversed our decision, concluding that, because the claimant established that her work with her employer caused the initial condition, she was entitled to continuing disability benefits, despite the fact that she was asymptomatic, based upon the fact that she would be subject to another blood clot if she returned to work with her employer. *Id.* at 588.

In *Lash*, the claimants, who handled lead on a daily basis as part of their job, were awarded partial disability benefits upon their transfer to lower paying lead-free jobs. As a result of their frequent exposure to lead, the claimants began to undergo physiological changes. The lead in their bodies reached abnormally high levels, which resulted in lead poisoning, an occupational disease under the Act. Because the

11

claimants could not risk further exposure to lead, they were precluded from returning to their pre-injury jobs. Ultimately, the Supreme Court reasoned, it would be unconscionable to require the claimants to remain exposed to lead until the advanced stages of lead poisoning in order to qualify to partial disability benefits. The basis for the Supreme Court's decision was the fact that the condition underlying the claimants' injuries did not exist before their employment with the employer, and the claimants established that their injuries were caused by her work. *Lash*, 420 A.2d at 1326-27. *See also Schrader Bellows Pneumatics v. Workers' Compensation Appeal Board (Earle)*, 711 A.2d 578 (Pa. Cmwlth. 1998) (wherein the claimant's recurrent contact dermatitis was caused by work, the claimant was entitled to benefits notwithstanding the fact that the symptoms of contact dermatitis resolved themselves as long as claimant did not return to work); *Muchnok v. Workers' Compensation Appeal Board (Consolidated Coal Co.)*, 723 A.2d 257 (Pa. Cmwlth. 1998) (where claimant did have some limitations that could be traced to the work-related injury, his benefits were to continue and not be terminated or suspended); *City of Philadelphia v. Workers' Compensation Appeal Board (Whaley-Campbell)*, 34 A.3d 871 (Pa. Cmwlth. 2011) (although the claimant had lifelong allergies, she did not have chronic conjunctivitis until she began to work for employer, and the claimant's exposure to her work environment resulted in an ongoing condition that affected her eyes).

In *Baxter*, the claimant had suffered from asthma since childhood, which was aggravated by his exposure to paint fumes at work. 708 A.2d at 801. This aggravation, however, did not result in any permanent injury to the claimant. The employer paid for the time the claimant was unable to work due to the aggravation, but the claimant did not return to his pre-injury position at his physician's recommendation. The claimant's physician testified that the claimant's lung functions had returned to

normal, but that his severe non-work-related asthma placed him at risk of future exacerbation of that condition if he returned to work. The physician further explained that the restrictions on the claimant's ability to work in a dusty environment "had nothing to do with [the claimant's] actual employment at [the employer] . . . [and] would have been placed on [the c]laimant whether or not he ever worked at [the employer] or had the episodes of exacerbation of his preexisting asthma . . . ." *Id.* at 802-03 (emphasis and quotation marks omitted). The referee granted the claim petition, and both the Board and this Court affirmed.

The employer appealed to the Supreme Court, which reversed. It held that the claimant had not established his eligibility for ongoing benefits because he had fully recovered from the work-related aggravation of his preexisting, non-work-related asthma. The Supreme Court observed that the underlying condition aggravated was preexisting and not work-related, and not like the residual work-related injuries that had never resolved in *Lash* and *Farquhar*. The Court explained that "[t]he claimant in *Farquhar* continued to suffer from thrombosis which was caused by her employment; [and] the *Lash* claimants continued to suffer from lead absorption which was caused by their employment." *Baxter*, 708 A.2d at 804. It further noted that, "[h]ad Baxter introduced medical evidence . . . that his exposure to paint fumes at [work] had resulted in an ongoing condition that affected his pulmonary capacity, *Farquhar* and *Lash* would be controlling." *Id.* However, his physician testified that there was "no evidence that the claimant had sustained any continuing changes to his pulmonary capacity or in the functioning of his lungs." *Id.* Because there had been no ongoing changes, the Supreme Court held that once the claimant had fully recovered from the work-related aggravation of his preexisting, non-work-related asthma and his condition returned to its baseline, the claimant was ineligible for benefits because his disability was no longer

13

related to the conditions of his workplace. *Id.* To hold otherwise, the Supreme Court reasoned, would

> undermine[ ] the principles of the Act [by] impos[ing] liability on an employer for the existence of a condition present from childhood when no residual work-related injury is demonstrated. Baxter was properly paid worker's compensation benefits for the period of time he was disabled by conditions at his workplace, as those conditions exacerbated his pre[]existing condition, but once he had fully recovered from that disability, he was ineligible for benefits.

*Id.*

Similarly, in *Giant Eagle,* this Court denied benefits to a claimant who "suffer[ed] from asthma, which, she admitted, existed prior to the time that she started working for [the] [e]mployer." 725 A.2d at 877. The claimant's work with the employer did not cause the condition, but merely aggravated the preexisting asthma. Because the claimant had fully recovered from the aggravation, and, therefore, the work-related injury, after leaving the workplace, she was not entitled to any benefits under the reasoning of *Baxter*. *Id.* We explained that although the claimant might have suffered a recurrence of her disability if she returned to work for the employer, she was not entitled to benefits under the holding of *Baxter* because she did not experience any residual physical injuries caused by her employment once she left the workplace. *Id.* at 877-88.

In *Meadville Forging Company*, the claimant's job involved programming a computer to cut metal parts and then manipulating the metal parts with his hands while the parts were exposed to coolants. The claimant began to experience numbness in his fingertips, which caused a loss of the dexterity needed to manipulate the parts. His doctor restricted him from exposure to the coolants. The employer gave the claimant gloves for protection, but the claimant was unable to do the job properly with

14

gloves. The claimant was transferred to another position for a short period of time and eventually laid off. 726 A.2d at 1111-12.

The claimant then filed a claim petition. The evidence accepted by the WCJ established that the claimant suffered from Raynaud's Phenomenon, a non-work-related medical condition elicited by using the fingers to tightly grasp objects or by cold temperatures. While the claimant's job was not the cause of the condition, it did aggravate the condition. As such, the WCJ granted benefits and the Board affirmed. On appeal to this Court, the employer argued that the claimant was not entitled to ongoing benefits because the job did not cause the claimant's medical condition, and the claimant was no longer suffering an aggravation of the condition. We agreed and reversed, basing our determination on *Baxter*. *Id.* at 1112-15.

In the case *sub judice*, we agree with the Board that Claimant's reliance on *Lash* and *Farquhar* is misplaced. In both *Lash* and *Farquhar*, the claimants established a workplace injury directly caused by their employment. Benefits were awarded because a return to the time-of-injury job would expose them to more dangerous health consequences. As explained in *Baxter*:

> The claimants in *Farquhar* and *Lash* suffered from residual work-related injuries **that were never resolved**. The claimant in *Farquhar* **continued to suffer** from thrombosis which was caused by her employment; the *Lash* claimants **continued to suffer** from lead absorption which was caused by their employment. These work-related injuries were ongoing. The *Farquhar* claimant did not fully recover from the thrombosis; the blood of the *Lash* claimants did not become lead free.
>
> Had [the claimant] introduced medical evidence in this case that [his] exposure to paint fumes at Bethlehem Steel had resulted in an ongoing condition that affected his pulmonary capacity, *Farquhar* and *Lash* would be controlling. Instead,

15

[the claimant's] medical expert found no evidence that the claimant had sustained any continuing changes to his pulmonary capacity or in the functioning of his lungs.

*Baxter*, 708 A.2d at 804 (emphasis added).

Instead, Claimant's situation is more like the claimants' aggravation of preexisting, non-work-related conditions in *Baxter*, *Meadville Forging Company*, and *Giant Eagle*. Claimant, like the claimants in those cases, fully recovered from sesamoiditis, and his foot returned to normal when not required to wear steel-toed boots. Specifically, Dr. Sayed testified that Claimant had a preexisting congenital "high arch" foot condition and that wearing steel-toed boots aggravated that condition, causing temporary sesamoiditis. His disability in that respect ended as of October 5, 2022, when his sesamoiditis resolved. Critically, the WCJ credited Dr. Ruht's opinion that Claimant's wearing of work boots caused him a lot of pain **but did not cause any structural damage to Claimant's feet,** and that by the time he examined Claimant on April 3, 2023, Claimant had fully recovered from any work-related foot injuries he may have developed.

Thus, with respect to the risk of harm in Claimant's return to work, the condition keeping Claimant from resuming his work duties is not work-related, but congenital and preexisting. As the *Baxter* Court explained, it would undermine the principles of the Act to impose liability on Employer for the existence of a congenital pre-existing condition when no residual work-related injury is demonstrated. Because Claimant did not experience any ongoing disabling changes to his foot or residual physical injuries caused by his employment, our Supreme Court's decision in *Baxter* is controlling, and we are obligated to affirm the decision of the Board. In doing so, we acknowledge that Claimant is presented with a difficult decision: he can either forgo benefits under the Act and not return to work, or he can return to work under the threat

16

of a potential relapse if he is again required to wear steel-toed boots. Although we are sympathetic to Claimant's predicament, we nonetheless are obligated to follow the precedent established by our Supreme Court.

The order of the Board is affirmed.


_____
PATRICIA A. McCULLOUGH, Judge


Judge Fizzano Cannon did not participate in the decision for this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Rodolfo Perez-Martinez,        :
            Petitioner      :
                      :
          v.          :   No. 283 C.D. 2025
                      :
Dart Container Corporation of   :
Pennsylvania (Workers' Compensation  :
Appeal Board),             :
           Respondent    :

## ***ORDER***

AND NOW, this 24th day of July, 2026, the February 5, 2025 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge